UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRYAN KEITH BROWN,

        Petitioner,

        v.                    CAUSE NO.: 3:18-CV-487-JD-MGG

WARDEN,

        Respondent.

OPINION AND ORDER

Bryan Keith Brown, a prisoner without a lawyer, filed a habeas corpus petition to challenge his convictions for felony murder, unlawful possession of a firearm by a serious violent felon, battery, and resisting law enforcement under Case No. 49G01-208-MR-211449. Following a jury trial, on October 3, 2003, The Marion County Superior Court sentenced Brown to sixty years of incarceration.

FACTUAL BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court of Appeals of Indiana summarized the evidence presented at trial:

> [O]n August 9, 2002, Eric Johnson and Sonia Rivera went to Johnson's apartment at Scarborough Lake Apartments to spend the night. Around 7:00 a.m. the following morning, Johnson went out to Rivera's car to retrieve a CD. Upon returning to his apartment, Johnson heard a noise, and as he turned around, one of three individuals held a gun in his face. The three individuals later identified as Brown, Jonathan Exum, and Lawrence Duff, pushed Johnson into his apartment, and Brown then

repeatedly "pistol-whipped" Johnson, causing Johnson to suffer from a deep cut and knot on his head a "busted" lip.

Meanwhile in the back bedroom, Rivera awoke and heard voices coming from the front of the apartment. Shortly thereafter the bedroom door was opened by an individual Rivera described as shorter black male with braids in his hair. This individual was later identified as Brown. Brown entered the bedroom, pulled at the covers which Rivera had wrapped herself in and began asking, "Where it at? Where's it at?" Brown then hit Rivera in the side of the head with the gun causing her pain and a large knot on her head. Brown then asked one of the other individuals to watch Rivera as he forced his way into a second locked bedroom in the apartment. Rivera could hear things falling and being moved around in the second bedroom and as Brown exited the room, he asked, "Where's the shit?"

Johnson then struggled with and got away from the third individual who was restraining him in the front of the apartment. Johnson made his way to the bedroom in which Rivera was located and "rushed" Brown. Tr. At 56. During the struggle which ensued, the gun Brown was holding fired. Johnson eventually wrestled the gun away from Brown and threw it across the bed. Johnson retrieved his own gun which was lying on the dresser and began firing. The three intruders tried to leave the apartment. Johnson went to the bedroom doorway and kept firing shots down the hall as the three men were exiting. One of the three, Lawrence Duff, was shot and killed by Johnson. Before exiting the apartment, Brown was shot in the right chest area and in the right buttock.

Johnson and Rivera then left the apartment and drove away from the apartment complex in Rivera's car. They stopped several blocks away, and Johnson called 911. Johnson and Rivera then returned to Johnson's apartment, where police had already arrived. As additional officers responded they set up a perimeter to look for the two suspects who were said to be fleeing on foot. Brian Schemenaur, a Deputy Sheriff with the Marion County Sherriff's Department, observed an individual he believed to be one of the two suspects running in the area of the apartment complex. Deputy Schemenaur was in a marked police car in uniform and identified himself as a police officer before ordering the individual to stop. The individual, later identified as Brown, kept running away from Deputy Schemenaur. Eventually, Deputy Schemenaur came across Brown hiding behind some bushes and was able to apprehend him. While being treated at the hospital Johnson identified Brown as one of the individuals who had accosted him and Rivera.

On August 13, 2002, the State charge Brown with felony murder, conspiracy to commit robbery, unlawful possession of a firearm by a serious violent felon, two counts of battery, carrying a handgun without a license, and resisting law enforcement. A jury trial was held on September 8 and 9, 2003, at the conclusion of which the jury found Brown guilty of all offenses, with the exception of the charge of conspiracy to commit robbery upon which the jury found Brown not guilty. The trial court held a sentencing hearing on October 3, 2003. Because of double jeopardy implication, the trial court vacated Brown's convictions for attempted robbery and carrying a handgun without a license. The trial court then sentenced Brown to concurrent imprisonment for unlawful possession of a firearm by a serious violent felon, eight years on each battery conviction, and 365 days for resisting laws enforcement, for a total aggregate sentence of sixty years.

ECF 7-6 at 2-5.

Brown challenged his conviction and sentence on direct appeal, but, on October 13, 2004, the Court of Appeals of Indiana affirmed the decision of the trial court. ECF 7-6. On January 6, 2005, the Indiana Supreme Court denied Brown's petition to transfer the case for discretionary review. ECF 7-2 at 3. On September 9, 2005, Brown initiated post-conviction proceedings in Marion Superior Court. ECF 7-1 at 10. On December 7, 2016,[1] after an evidentiary hearing, the Marion Superior Court denied the petition for post-conviction relief. ECF 7-7. Brown filed a notice of appeal, but, on November 3, 2017, the Court of Appeals of Indiana dismissed the appeal, citing Brown's failure to file a timely appellate brief. ECF 7-14.

---

[1] Though it is not entirely clear why nearly eleven years were needed to resolve the initial-review post-conviction proceedings, the electronic docket suggests that the delay was caused by the availability of the public defender's office, the hiring and withdrawal of private counsel, and the Marion Superior Court denying an initial petition but allowing Brown to amend. ECF 7-1 at 10-22.

Brown argues that he is entitled to habeas corpus relief, alleging that trial counsel was ineffective for: (1) failing to investigate and introduce evidence that Sonia Rivera also fired gunshots during the incident and that the incident was the result of a poorly executed drug deal rather than an attempted robbery; (2) failing to record the interview of Sonia Rivera; (3) preventing Brown from testifying at trial; and (4) failing to object to the prosecution's comments during closing argument. Brown also alleges that his appellate counsel was ineffective for failing to raise arguments about the prosecution's closing arguments and the sufficiency of the evidence.[2]

## PROCEDURAL DEFAULT

Before considering the merits of a habeas petition, I must ensure that the petitioner has exhausted all available remedies in State court—including seeking relief from the State's highest court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004); *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). To bring a claim in federal habeas, the petitioner must have "fully and fairly presented his federal claims" in state court. *Rodriquez v. Scillia* 193, F.3d 913, 916 (7th Cir. 1999). Moreover, a federal court will deny a petition if the petitioner has presented his or her federal claims to the state courts, but nevertheless, the state dismissed the petition on adequate and independent state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729-31 (1991). Brown raised several of his ineffective assistance of counsel claims during post-conviction relief

---

[2] In the petition, Brown argues that the Court of Appeals of Indiana erroneously dismissed his appeal at the post-conviction relief stage and presents this argument as both a habeas claim and as an excuse for procedural default. However, this claim is not a cognizable basis for habeas relief. *See Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) (stating that States have no obligation to provide an avenue for post-conviction relief).

proceedings before the Marion Superior Court, but the Court of Appeals of Indiana dismissed his appeal on the basis that he failed to file a timely brief. ECF 7-14. Therefore, his claims are procedurally defaulted.

Brown argues that his procedural default should be excused. Federal courts may consider procedurally defaulted claims if the petitioner demonstrates "cause for his default and prejudice resulting therefrom, or that a miscarriage of justice will result if we do not consider the merits of his case." *Anderson v. Benik* 471 F.3d 811, 815 (7th Cir. 2006). "Cause under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Id.* "For example, a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials' made compliance impracticable, would constitute cause under this standard." *Id.*

Brown argues that his deadline to file his appellate brief was thirty days after the trial court clerk served a "new Notice of Completion of Transcript" but that the trial court clerk never served or filed this notice. After reviewing the record, it appears that Brown misinterpreted arguably ambiguous phrasing in the appellate court's order that set the filing deadline. Though it is unclear whether this phrasing is sufficient to excuse procedural default, Brown's confusion regarding the appellate court's order was

understandable in light of his pro se status. As a result, the court will consider the

merits of his claims.[3]

## LEGAL STANDARDS

### Habeas Corpus

"Federal habeas review . . . exists as a guard against extreme malfunctions in the

state criminal justice systems, not a substitute for ordinary error correction through

appeal." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (quotations and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that
> clearly established Federal law for purposes of §2254(d)(1) includes only
> the holdings, as opposed to the dicta, of this Court's decisions. And an
> unreasonable application of those holdings must be objectively
> unreasonable, not merely wrong; even clear error will not suffice. To
> satisfy this high bar, a habeas petitioner is required to show that the state
> court's ruling on the claim being presented in federal court was so lacking
> in justification that there was an error well understood and
> comprehended in existing law beyond any possibility for fairminded
> disagreement.

---

[3] Federal courts may consider claims for habeas relief under certain circumstances even if such claims are procedurally barred. 28 U.S.C. § 2254(b)(2).

*Woods*, 135 S. Ct. at 1376 (quotation marks and citations omitted). Criminal defendants are entitled to a fair trial but not a perfect one. *Rose v. Clark*, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted).

<u>Ineffective Assistance of Counsel</u>

To prevail on an ineffective assistance of counsel claim in the State courts, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 693. In assessing prejudice under *Strickland* "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). However, "[o]n habeas review, [the] inquiry is now whether the state court unreasonably applied *Strickland*."

*McNary v. Lemke*, 708 F.3d 905, 914 (7th Cir. 2013). "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." *Id.*

ANALYSIS

Failure to Investigate and Introduce Testimony Advice to Refrain from Testifying

Brown argues that he is entitled to habeas relief because trial counsel failed to investigate and introduce evidence that Sonia Rivera also fired gunshots during the incident and that the incident was a poorly executed drug deal rather than an attempted robbery. He also argues that trial counsel prevented Brown from testifying at trial. He contends that his testimony may have convinced the jury that the incident was the result of a drug-related dispute rather than an attempted robbery, which would have resulted in no conviction on the felony murder charge.

At trial, Brown faced a charge of felony murder on the theory that Brown was involved in an attempted robbery, which resulted in the death of Duff, his associate. The prosecution presented Sonia Rivera and Eric Johnson, who testified that they did not know Brown or his associates prior to the incident and described how Brown and his associates had attempted to rob them. Trial Tr. at 41-62, 167-77. They further testified that Eric Johnson shot Duff in self-defense. *Id.*

To contradict the prosecution's version of events, trial counsel presented a letter drafted by Brown to the prosecution in which he alleged that Sonia Rivera also fired gunshots during the altercation. *Id.* at 420-22; Trial Ex. 33. Trial counsel also established the amount of cocaine found in the apartment and then presented David Eliot as a narcotics expert to testify that the amount of cocaine and the presence of plastic bags

and weighing scales strongly suggested that the cocaine was intended for sale rather than personal use. Trial Tr. 466-75. During closing, trial counsel invited the jury to believe that Eric Johnson and Sonia Rivera fabricated their testimony and that Eric Johnson had a prior relationship with Brown and his associates as a drug dealer or otherwise. *Id.* at 590-630.

During trial, Brown and trial counsel discussed whether Brown should testify, and they documented this discussion. ECF 15-1 at 44-45. In this document, trial counsel wrote, "I recommend against. Detail what you think you can say to help." Brown responded that he wanted to testify that he had a pre-existing relationship with Johnson and participated in drug deals with him. *Id.* Trial counsel responded that "I don't think anything here will make a difference other than to hurt you." *Id.* Brown also wrote that the jury wanted to know whether or not the incident was an attempted robbery. *Id.* Trial counsel responded, "They don't know. That's the point. [The] burden is on the state, not you. [The jury] can't/shouldn't convict if they don't know. You told them in your letter." *Id.*

Following Brown and trial counsel's discussion, trial counsel relayed it to the trial court as follows:

> **Trial Counsel:** Mr. Brown has decided, at this time, he will not testify after speaking with me. And I -- But I promised him that I would put on the record that I had recommended to him that he not testify, so he doesn't think that he's getting blind-sighted. So, I don't know if the court wants to do that now, or later, but I would like to make a representation.
>
> **The Court:** We'll do it after the jury goes out.
>
> **Trial Counsel:** And then he's going to elect not to testify.

* * *

**The Court:** All right, you may be seated. [Trial counsel], you wanted to make a record?

**Trial Counsel:** Yes, Your Honor, on behalf of Mr. Brown. Mr. Brown and I had a lengthy discussion as to whether or not he should testify or not and I promised him that for the record I'd make it clear that I had recommended to him that he not testify and that he is following my advice not to testify. I just wanted to make that part of the record in case there is an error on my part in the advice that I gave him, that it would be there, and everybody would know why he did what he did.

**The Court:** All right. Is that correct, Mr. Brown? You've decided not to testify based upon the advice or your attorney?

**Brown:** Yes.

**The Court:** Okay. Alright, that's noted for the record.

Trial Tr. 489-90, 494-95.

At the post-conviction relief stage, Brown argued that trial counsel deprived him of his right to testify. "[A] defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). However, to demonstrate a violation of this right, "the defendant must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer forbade him to take the stand." *Gross v. Knight*, 560 F.3d 668, 672 (7th Cir. 2009). "[A]n affidavit from the defendant's lawyer might suffice." *Id.*

At an evidentiary hearing, trial counsel testified that he had advised Brown not to testify because Brown had provided inconsistent narratives about his arrival at the

10

apartment. ECF 7-8 at 39-40. He did not see the benefit of Brown testifying that he had conducted drug-related transactions with Johnson. *Id.* He also reaffirmed his discussion with Brown at trial regarding his testimony as detailed above. *Id.* at 45-47. Though Brown told the post-conviction court that he did not make the decision to refrain from testifying at trial, he did not testify during post-conviction proceedings. *Id.* at 43. The post-conviction court denied the claim because Brown had not provided sufficient evidence to show that trial counsel prevented him from testifying instead of merely advising him to do so. ECF 7-7 at 8-9. The post-conviction court further found that trial counsel based the advice on his impression that Brown would have made a poor witness and on his assessment that Brown's testimony would not have benefitted Brown. *Id.*

At the post-conviction relief stage, Brown also argued that trial counsel failed to subject the prosecution's case to meaningful adversarial testing. "[I]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *United States v. Cronic*, 466 U.S. 648, 659 (1984). The post-conviction court summarily denied this claim based on the record, finding that trial counsel meaningfully challenged the prosecution's case. ECF 7-7 at 10-11.

After reviewing the record, the court cannot conclude that the State court determinations regarding Brown's right to testify and trial counsel's performance were objectively unreasonable. To start, the State court's factual determination that trial counsel did not prevent him from testifying is not unreasonable in light of the evidence

presented in the post-conviction proceedings. This evidence consisted of the documentation of his discussion with trial counsel, trial counsel's testimony at the evidentiary hearing, and Brown's affirmation to the trial court that the decision not to testify was his decision. The evidentiary record thus contained ample support for the State court's factual determination regarding trial counsel's conduct and no evidence to the contrary.

Moreover, the record demonstrates that trial counsel did not fail to subject the prosecution's to meaningful adversarial testing. To qualify for the presumption of prejudice under *Cronic*, Brown was required to show that trial counsel failed "to oppose the prosecution throughout an entire proceeding" rather than showing that trial counsel failed "to do so at particular points." *McDowell v. Kingston*, 497 F.3d 757, 763 (7th Cir. 2007); *see also Florida v. Nixon*, 543 U.S. 175, 190 (2004) (holding that "counsel's failure must be complete"); *Bell v. Cone*, 535 U.S. 685, 697 (2002) (same). At trial, trial counsel gave an opening statement and a closing argument and cross-examined many of the prosecution's witnesses. He also presented witnesses to support the defense theory that Brown and the victim has a preexisting relationship based on drug transactions and that the altercation arose from a drug-related dispute rather than an attempted robbery. Consequently, the State court's determination that trial counsel did not fail to subject to the prosecution's case to meaningful adversarial testing was not unreasonable.

Brown also claims that trial counsel should have investigated and introduced more evidence to support the propositions that Sonia Rivera fired gunshots during the incident and that the incident was a poorly executed drug deal rather than an attempted

robbery. However, the only evidence Brown identifies to support these claims is evidence that was already introduced at trial and his testimony, so the court construes this claim as asserting that trial counsel was ineffective for advising Brown not to testify. "[T]he decision not to place the defendant on the stand is a classic example of what might be considered sound trial strategy." *United States v. Norwood*, 798 F.2d 1094, 1100 (7th Cir. 1986).

The record indicates that trial counsel's decision to advise Brown to not testify was both strategic and reasonable. Trial counsel testified that he was concerned about Brown's credibility and that testimony explaining Brown's drug transaction history with Johnson was not likely to benefit Brown. While the jury may have found Brown's testimony more convincing than the approach taken by trial counsel, it is also plausible that the testimony would have made no difference. For instance, the jury may have instead believed that Brown's involvement with the drug trade was distasteful, and, even if they did not, the prosecution could have attacked Brown's credibility on cross-examination in any number of ways. Further, trial counsel presented evidence that Rivera had fired gunshots and that Johnson was a prolific drug dealer, and he invited the jury to conclude that the incident was a drug-related dispute rather than an attempted robbery. These efforts largely provided the value of Brown's proposed testimony without exposing Brown to the associated risks. In sum, trial counsel made the sound strategic decision to advise Brown not to testify because he believed that the risks related to credibility outweighed the probative value of Brown's testimony. *See United States v. Stuart*, 773 F.3d 849, 853 (7th Cir. 2014) (declining to present the

defendant as a witness based on low probative value of the testimony and potential alienation of the jury was reasonable); *United States v. Curtis*, 742 F.2d 1070, 1075 (7th Cir. 1984) (declining to present witnesses based on bias, prior convictions and the probative value of the testimony was not deficient performance).

Brown also contends that additional evidence that Rivera fired gunshots would have entitled Brown to a self-defense instruction, but, with respect to the charge of felony murder, the trial court would not have allowed such an instruction under any circumstance. *See Roche v. State*, 690 N.E.2d 1115, 1124 (Ind. 1997) (holding that self-defense is not available as a defense to felony murder). Therefore, Brown's claims that trial counsel was ineffective for failing to introduce evidence and for preventing him from testifying are not a basis for habeas relief.

Deposition Testimony

Brown argues that he is entitled to habeas relief because trial counsel failed to record Sonia Rivera's testimony during a deposition. He argues that this failure resulted in the need for a continuance and deprived him of his right to a speedy trial. According to Brown, the continuance allowed Johnson to reach a use-immunity agreement with the prosecution, which allowed Johnson to testify against Brown. He further argues that the unrecorded testimony may have been favorable to his case.

At a pretrial hearing, on December 6, 2002, the prosecution requested a continuance for the trial, which was scheduled the following Monday, because he had not interviewed Rivera or Johnson. ECF 15-1 at 20. Trial counsel stated that he questioned Rivera for thirty to forty minutes but that he did not record the interview. *Id.*

at 20-21. Trial counsel also reported that, when he questioned Johnson about his relationship with drugs, he invoked his Fifth Amendment right against self-incrimination. *Id.* Trial counsel requested appointment of counsel for Johnson so that the interview could continue. *Id.* at 21-22. The prosecution responded that they were willing to grant him use immunity and could reach an agreement prior to Monday. *Id.* at 23. Though trial counsel believed that he needed additional time to interview Rivera and Johnson, he objected to the trial continuance due to Brown's wishes. *Id.* at 24-27. The trial court then denied the continuance. *Id.* After a short recess, the parties came back to the trial court. Brown waived his right to speedy trial, and the trial was continued. *Id.* at 33-37.

At the post-conviction relief stage, Brown argued that trial counsel was ineffective for failing to check the recording device when deposing Rivera because this mistake allowed Johnson to testify at trial. The post-conviction court found that Johnson was already available to testify and that a subpoena and use agreement were filed before the initial trial date. ECF 7-7 at 5-6. It concluded that Brown had not demonstrated how the outcome of trial would be different if trial counsel had recorded the interview. *Id.*

After reviewing the record, the court cannot conclude that the State court determination regarding the failure to record the Rivera testimony was objectively unreasonable. Notably, Brown has not offered a plausible explanation as to how the outcome of his trial might have been different. The record indicates that the prosecution was prepared to present Johnson as a witness at the time of the initial trial date. Trial

Ex. A. Moreover, the use-immunity agreement likely benefitted Brown, not the prosecution -- absent such an agreement, Johnson may have been able to testify against Brown while still retaining the right to assert the Fifth Amendment in response to questions about his involvement with drugs. *See United States v. McClurge*, 311 F.3d 866, 873 (7th Cir. 2002) (explaining the interplay between the Confrontation Clause and right against self-incrimination). Brown further argues that the unrecorded testimony may have been favorable to his case, but this argument consists of nothing more than speculation. Therefore, Brown's claim that trial counsel was ineffective for failing to record the Rivera interview is not a basis for habeas relief.

Closing Arguments

Brown argues that he is entitled to habeas relief because trial counsel was ineffective for failing to object to a portion of the prosecution's closing arguments. During closing arguments, trial counsel invited the jury to conclude that the incident was a drug-related dispute rather than an attempted robbery. Trial Tr. at 590-630. In rebuttal, the prosecution argued:

> I just want to point out a couple of things about defendants' closing arguments. The judge is going to tell you that you cannot find reasonable doubt based on speculation, based on imagination, and that speculation and imagination is the only possible way to describe the theory that there was maybe a drug deal going on between Eric Johnson and the other two guys and [Rivera] got pissed and grabbed the .45 caliber semi-automatic -- I'm sorry, the .45 caliber revolver and fired a shot in the bedroom wall, then went down the hallway -- bang, bang, bang, to Lawrence Duff, bang, bang to Johnathan Exum. That's speculation.
>
> Is it speculation to say that there's a drug deal, a drug deal that went bad and something happened? Yeah, that's speculation too. It doesn't matter at what point this turned into a robbery. Remember, during voir dire

when we were talking about whether a robbery could have started? You didn't have to know before you go pull into McDonald's that the other guy was going to do the robbery, but once he starts to and you participate, it is a robbery. I don't know. I don't care if this was a drug deal that somehow went bad. Maybe that's what happened. If that's what happened in the apartment, then that's what happened, but it doesn't matter because they went in that apartment, they got the gun, they demand money, shit, whatever you got, and point that gun. They battered [Johnson] and [Rivera] with the handgun, and that is what they're charged with. That is what the law says is felony murder and that is what I am asking you to convict on.

*Id.* at 638-39.

At the post-conviction relief stage, Brown argued that the prosecution's statements invited the jury to disregard the need to find him guilty of attempted robbery for a conviction on the charge of felony murder. The post-conviction court stated, "It is clear that when State made its argument, that it was immaterial if this was a drug deal, it was speaking to the dismissive prejudice towards drug-related crimes that is perceived among juries." ECF 7-7 at 10. The post-conviction court concluded that the trial court would have been unlikely to sustain an objection and that Brown had failed to demonstrate prejudice. *Id.*

After reviewing the record, the court cannot conclude that the State court determination regarding the failure to object to the prosecution's statements was objectively unreasonable. During closing arguments, the prosecution may have been referring to the prejudice against drug-related crimes, or it may have simply been referring to the fact that the incident could have simultaneously been an attempted robbery and had some connection to a drug transaction. Under either scenario, the prosecution did not invite the jury to disregard the need to find him guilty of attempted

17

robbery but instead downplayed the significance of the relationship of drugs to the case. While this argument contradicted the defense theory, the opportunity to present such an argument is the very purpose of a prosecutor's rebuttal, and it is unclear what objection, if any, the trial court would have sustained. Consequently, Brown has not demonstrated that the lack of objection constituted ineffective assistance of counsel. *See Carter v. Douma*, 796 F.3d 726, 735 (7th Cir. 2015) ("performance was not deficient by failing to make a futile objection"); *Hardamon v. United States*, 319 F.3d 943, 949 (7th Cir. 2003) (whether to lodge an objection is generally a matter of trial strategy); Therefore, Brown's claim that trial counsel was ineffective for failing to object to the prosecution's closing argument is not a basis for habeas relief.

Appellate Counsel

Brown argues that appellate counsel was ineffective for failing to argue that the evidence presented at trial was insufficient to support the prosecution's theory because the evidence demonstrated that Rivera had also fired gunshots. "Appellate lawyers are not required to present every nonfrivolous claim on behalf of their clients—such a requirement would serve to bury strong arguments in weak ones—but they are expected to select the most promising issues for review." *Shaw v. Wilson*, 721 F.3d 908, 915 (7th Cir. 2013). Under Indiana law, for sufficiency of the evidence claims, the appellate court considers "only the evidence favorable to the verdict and all reasonable inferences which can be drawn therefrom." *Exum v. State*, 812 N.E.2d 204, 207 (Ind. Ct. App. 2004). "If there is substantial evidence of probative value from which a trier of fact

could find guilt beyond a reasonable doubt, [the appellate court] will affirm the conviction." *Id.*

Before trial, Brown wrote a letter to the prosecution, alleging that, following a drug dispute, Rivera shot Brown twice and Duff, the deceased, once and that Johnson took the gun from Rivera, chased Duff, and killed him. Trial Ex. 33. At trial, this letter was admitted into evidence. Trial Tr. 420-22. The jury was instructed to determine whether the prosecution had proven that Duff was killed as a direct and proximate result of Brown and his codefendant's attempt to rob Johnson. ECF 7-6 at 9-12. At the post-conviction relief stage, the Marion Superior Court denied Brown's claims of ineffective assistance of appellate counsel, reasoning that appellate counsel was not ineffective for raising meritless claims. ECF 7-7 at 11-13.

The evidence favorable to the verdict included the testimony of Rivera and Johnson, which, by itself, was sufficient for a jury to convict Brown as instructed on the felony murder charge. The fact that Brown's letter contradicts the evidence supporting the prosecution's case did not render this evidence insufficient but instead created a factual dispute to be resolved by the jury. If appellate counsel had raised this suffiency of the evidence claim, the appellate court would have denied it. Therefore, appellate counsel was not ineffective for not raising the claim. *See Walker v. Griffin*, 835 F.3d 705, 710 (7th Cir. 2016) (the decision not to raise an easily cured sufficiency of the evidence claim on appeal was not ineffective assistance); *Baggett v. Pfister*, 2017 WL 4339793, at *6 (N.D. Ill. 2017) (the decision not to raise a meritless sufficiency of the evidence claim on

appeal was not ineffective assistance); *Holbert v. Superintendent*, 2015 WL 859553, at *6 (S.D. Ind. 2015) (same).

Brown also argues that he is entitled to habeas relief, alleging that appellate counsel was ineffective for failing to raise arguments about the prosecution's closing statements. For the reasons detailed above, it is unclear what valid argument appellate counsel could have raised on direct appeal. Therefore, Brown's claims that his appellate counsel was ineffective is not a basis for habeas relief.

## CERTIFICATE OF APPEALABILITY

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this opinion for denying habeas corpus relief, there is no basis for encouraging Brown to proceed further.

For these reasons, the court DENIES the habeas corpus petition; DENIES a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED on June 4, 2019

_____/s/ JON E. DEGUILIO_____
JUDGE
UNITED STATES DISTRICT COURT